The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention. The Court is now sitting. God save the United States and this Honorable Court. Let's get it placed. Alright, we'll begin with the Knox Energy v. Gasco Drilling and Mr. Berg will hear from you. May it please the Court. The District Court in this contract case gave a jury instruction that contradicts Virginia law of mutual assent, relieved Defendant Consall of proving its affirmative defense of unilateral mistake, and improperly shifted to Plaintiff Gasco the burden of proving an additional element as part of its that did not belong in its prima facie case, namely the absence of Consall's purported mistake. Given the reasonable probability that each of the instructional errors independently affected the jury's verdict, any one of them alone warrants reversal. Additionally, a new trial is required by Consall's misconduct, which obstructed Gasco's case and prevented the admission of evidence fundamentally inconsistent with Consall's claims. From discovery through summation, Consall built its case on representations and arguments about its contracting practices that contradict its own contract that its counsel possessed but withheld from Gasco during discovery. That contract contradicts Consall's theory of the case, its claimed mistake, and its mutual assent arguments. Consall's misconduct thus prevented the jury from learning the truth and makes it inequitable for Consall to retain the benefit of the verdict. Turning first to the instructional errors, the first and most straightforward error in the instructions is that the District Court failed to instruct the jury that mutual assent must be evaluated exclusively based on the parties communications at the time of contracting. It can't be disputed that the Virginia Supreme Court has stated that rule repeatedly, but over Gasco's objection, the District Court failed to instruct on that aspect of Virginia law. Had they charged express communications, would that have cured all the other claims of error in the charge? No, it would not. This is an independent problem, and there were additional problems with the instruction, like the injection of the mistake into the mutual assent inquiry. That's a separate issue that would not have been resolved by this. Consall argued in its closing that there was no mutual assent based on events that happened after the contract was signed. At JA 2072, Consall argued about bids that happened after the contract was signed. Consall made arguments at JA 2076-77 about invoices and Gasco's monthly billing practices and the invoice that was ultimately sent a year later. And it also argued at JA 2061 about a letter written, quote, a year after the contract was allegedly entered into. To argue that the post-contract evidence bears on mutual assent is inconsistent with the Supreme Court of Virginia's Dennis decision just last year. There, one of the plaintiff's arguments was that he did not have access to a price list, which was a material term in the agreement. He asked the hospital for the price list after he had signed the contract, and the hospital refused. And he argued to the Virginia Supreme Court that that was a material term that was missing from the contract. The Virginia Supreme Court said that the hospital's refusal to provide the price list after the contract was signed, quote, was not relevant to the expressions of assent at the time of contracting. The other way in which Consall's closing argument ran afoul of this rule is that Consall argued that Gasco's internal meetings and internal communications also bore on mutual assent. You can see that at JA 2075-77. In the Mormon case, the Virginia Supreme Court made clear that it is error to evaluate mutual assent based on communications, quote, but that's exactly what this instruction allowed Consall to do. This rule about the universe of evidence that's relevant to mutual assent is critical to contractual certainty. Once parties sign a contract, they need to know that their internal communications and subsequent events are not going to undo the contract that has already been signed. Well, your colleagues will probably argue that they just took, the judges took the charge in our procurium opinion. One, was our statement on the law a mistake, or was it just dictative, or is it the rule of the case? What is it? So we believe that it was clearly dictative because it was not essential to the court's holding. This court was resolving a Rule 50 motion. It applied the real agreement standard from the Lucy case, and it was not purporting to opine on how a jury should be instructed on the law of Virginia and mutual assent. That issue of injecting mistake into mutual assent is what the Virginia Supreme Court said last year in Dennis. That's another issue that was addressed in Dennis, is wrong. Mutual assent is a formation doctrine. The plaintiff bears the burden of proof by preponderance of the evidence. Unilateral mistake is a defense. The defendant must prove it by clear and convincing evidence, and it must prove fraud in addition to proving the mistake. In Dennis, the trial court had found that the defendant patient was objectively in duress. He was, quote, agitated, tearful, illogical, less than normally coherent, and fearful, thought he was going to die. He was lying on a gurney in a hospital. He said he didn't read the contract. He signed it because he understood that was the only way of treatment. And the Virginia Supreme Court reversed and said that in finding no mutual assent, the circuit court relied on factors that have no bearing on whether Dennis manifested his assent and injected principles of duress into its determination of mutual assent. Duress is an affirmative defense to enforcement of a contract, and as a species of fraud must be proved by clear and convincing evidence. Console utterly ignores that footnote, which makes that rule crystal clear. Yet that's exactly what happened here. The jury instruction did not tell the jury anything about an affirmative defense of mistake, and instead injected the issue of mistake into mutual assent. And Console admitted as much. Before this court's opinion, its proposed jury instruction for mutual assent did not mention mistake, did not mention knew or should have known. Its unilateral mistake defense had both of those statements. After this court's opinion, Console was very transparent. It told the district court, the JA444 footnote 2, we are not submitting a unilateral mistake instruction because of what the Fourth Circuit said in its opinion. And it took the knew or should have known language about the mistake out of its defense of instruction, put it into its mutual assent instruction, and it dropped a mistake defense altogether. And that is exactly what the Virginia Supreme Court said. You know, when you read the language you're complaining about, which is a quote from our earlier opinion, and the mutual assent instruction, which is immediately before that, it seems to me that the jury could only be instructed on the notion that there has to be mutual assent, a meeting of the minds, based on what a reasonable person would have construed from the objective evidence. And I don't follow your characterizations that the court was instructing about subjective evidence. The court said just the opposite. It said you may not consider it. And then it talked about that. It then took our quote from the prior opinion. It seems to me a jury listening to this is going to decide, did the parties get together and agree on this? And, of course, the jury answered that question in this case. So I think for three reasons that sentence doesn't do what Your Honor is referring to. Well, my big point is you're not allowing the full instruction to be considered. Read the paragraph before and that paragraph together. And I think you can only come to one real conclusion. So, Your Honor, what I would say is that the district court, if you look in the middle of this instruction, it says a meeting of the minds may be shown by direct evidence of intent. On JA 563, the district court defined for the jury direct evidence is the direct proof of a fact such as testimony of an eyewitness. So this jury was told a meeting of the minds may be shown by eyewitness testimony of intent. That is not consistent with an objective instruction, and a lay jury is going to be confused by that. It says if a person's words or actions warrant a reasonable person in believing that it intended a real agreement, it's contrary, but unexpressed state of mind is immaterial. Correct. And that's a statement of relevance? It's conditional? A lay jury is? A reasonable person is the objective standard. And the sentence before that, it says you have to look at a word, act, or conduct. A meeting of the minds may be shown by direct evidence or intent or by indirect evidence of facts which imply intent. And then the court says if a party's words or actions warrant a reasonable person into believing, that's an objective standard. That part of it is objective, but it conflicts with the prior sentence. But that's an independent issue. I thought that was your main issue. You opened up the argument with it. Your Honor, in the brief we did. But the first two issues, the failure to instruct on the exclusivity rule, that's an independent problem. And injecting the mistake defense into mutual assent is an independent problem. This jury was basically told if you think Consol made a mistake, mutual assent is where you resolve that issue. And that is wrong. The Virginia Supreme Court. I think it said if you made a mistake so as they did not intend to enter into the contract. What it says is that if either party knew or should have known the other made a mistake with respect to the alleged agreement, then there was no meeting of the minds and no contract. That's exactly what happened in Dennis. Mistake, just like duress, is an affirmative defense that requires proof. Except you left out the first part, is that if your client knew of the mistake and then tried to take advantage of it, there was no meeting of the minds. And that is an accurate statement of mutual assent. It's not, Your Honor, not in Virginia. If you read the Ward case, the Ward case makes very clear. Ward argued that he and his wife. The word mistake doesn't make it fatal. The question is you're addressing the mutual intent of the parties. And if I know you made a mistake and I'm taking advantage of it, I know you did not intend to enter into this contract. It goes to whether I know you're intending, whether we have mutual intent. And there was evidence in this case to suggest that Gasco did know that this was a mistake as early as December 2010. And, Your Honor, I would simply submit that's not the law of Virginia. If you read the Ward case and the Dennis case. All right. Now, in the time I have left, I'd like to turn to the misconduct issue. And there, Console's false claims about its purported mistake and its contracting practices fundamentally changed the nature of this case. Console's argument all along was the mistake was sending the addendum. It said if you look at the title of the document, it's an addendum to a contract purchase order. Drilling contracts are not contract purchase orders. And our mistake was sending this addendum out to a drilling contractor. Console told the district court that the terminology matters because it explains what the mistake was that Console made and how it happened. That's at JA 1331-32. And that mistake fit right into Console's mutual assent arguments. As it argued after trial to the district court on page 24 of our reply brief, we quote this, Console argued that Console mistakenly sent the addendum form is the predicate for whether Gasco knew or should have known about the mistake. And so the terminology explained the mistake and the mistake was the predicate for the mutual assent argument. But the Noah Horne contract purchase order shows that all of that was false. Drilling contracts can be contract purchase orders. The terminology does not explain the mistake or how it happened. Sending the addendum was not the mistake. The Noah Horne contract was a drilling contract purchase order. Console argued to the jury that does not exist. Wasn't that an exclusive drilling contract? It was an exclusive drilling contract. And didn't your client know that in December when they lost out? The original contract ended in August, I guess, of 2010 in December. They were told that Noah Horne won the contract, an exclusive contract. They were never told it was an exclusive contract. What they were told is that. They knew that. Your clients knew that. No. Our clients never knew that it was an exclusive contract. We sought it in discovery. Console never turned it over. And to the contrary, Console repeatedly made false representations about its practices throughout the case. It argued to the jury drilling contracts must be bid out. The Noah Horne contract purchase order was not bid out. The addendum contract was not bid out. That was a misleading argument to make, and it fundamentally changed the case. The Noah Horne contract purchase order had a 12-31-99-99 validity date. Console stood up both with respect to cross-examining Mr. Ratliff and in its closing argument and said, look at that date. That's absurd. No one could possibly think this is a real agreement. But both the addendum papers and the Noah Horne contract purchase order have that same validity date. And so this fundamentally changes the nature of mutual assent analysis. These contracts are similar. A reasonable person could think this was a real agreement. More importantly, this changes the nature of the mistake. Once Console's mistake is failing to read the contract that it signed, that's a fundamentally different mistake. Virginia law has no sympathy for that kind of mistake, and a jury is not going to be sympathetic to that kind of mistake. It fundamentally changes what the case is about. If Console had been honest from the beginning of this case about what that contract was, if they had recognized what it was, ethically they could not have made the arguments that they did. And so, Your Honors, we submit that the misconduct that Console committed with respect to arguments to the jury, the 30B6 deposition, the false statements in their arguments, they said things like contract purchase orders have nothing to do with drilling contracts. Drilling contracts were not handled through contract purchase orders. They told the jury every other drilling contract we've ever had was a contract that went out for competitive bid, and all of those statements were false. Thank you, Your Honors. Thank you. All right, Mr. Finney. May it please the Court. Michael Finney on behalf of Console and Knox Energy. I will be addressing the mutual assent jury instruction arguments. Ms. Monday, Monica Monday, will be arguing the issues surrounding the 2012 Noah Horn contract. In the first appeal, Gasco argued that a jury should pass judgment on the mutual assent inquiry. Twelve jurors unanimously did, but in Console's favor. Now Gasco seeks to re-litigate issues that were carefully considered and decided by this Court and distorts Virginia's well-settled mutual assent law in the process. Lucy B. Zimmer is the seminal mutual assent decision in Virginia. It established that mutual assent turns on whether a party's words and conduct would warrant a reasonable person in believing they intended a real agreement. In the first appeal, this Court applied Lucy, quoting this very language, and held that if Gasco knew or should have known that Console made a mistake, there was no mutual assent and thus no contract. That holding was a correct statement of Virginia law, and it was applied to the circumstances of this case. Moreover, when Gasco failed to seek re-hearing on that legal standard, it became the law of this case, which governed not only the proceedings on remand, but also this subsequent appeal. There's no doubt that the mutual assent standard was squarely at issue in the first appeal. Parties argued about it extensively. Gasco urged the Court that mutual assent should only be looked at very narrowly. The only thing that could possibly be relevant is the addendum form and the parties' communications in June 2011. Based on Lucy, Console argued that the issue is whether a reasonable company in Gasco's shoes at the time could have believed that Console intended a real agreement. To make that determination, context obviously mattered. In its opinion, the Court explicitly agreed with Console's framing of the mutual assent inquiry, and then it went on to consider all of the evidence that had been produced in the first trial before Gasco rested. Given that mix in evidence, the Court concluded that a jury should have the right to pass on the mutual assent inquiry, but it did set the terms of what that standard would be. And that is a holding of the first opinion. Judge Follett, I believe you asked that question. To decide whether judgment as a matter of law was proper or not, the Court first had to ascertain the legal standard. The parties argued about it vigorously. The Court had to make a ruling first, this is the legal standard that applies to this case, reviewed the evidence, and determined that judgment as a matter of law was improper. But it was the correct statement of the law. There is no reason to disturb the Court's decision on this issue, and the law of the case doctrine should be followed. That is what the jury instructions did, and there's no exception applies. In the LGBT Wilbon case, the Fourth Circuit said there are three exceptions that could disturb the law of the case. One is a subsequent trial produces substantially different evidence. I don't believe that's even at issue here. Second is whether controlling authority has made a contrary decision of law applicable to the issue. I believe that Gasco is contending that the Dennis decision from the Virginia Supreme Court is that controlling authority. It plainly is not. By its own terms, Dennis is an unpublished order from the Virginia Supreme Court which according to Rule 5, colon, 1F, of the rules of the Supreme Court of Virginia is not controlling. It shall not be received as binding authority. So as a threshold issue, it doesn't meet that standard. Moreover, it is not contrary to the decision of this case. It's not a decision that says – it's not a loosey mutual descent decision where it says the reasonable meaning of one party's manifestations as interpreted by a party in Gasco's shoes. That's not part of the Gasco inquiry. Instead, what Dennis said was the trial court erred because it injected factual issues that have nothing to do with the mutual ascent inquiry. Primarily, it was that Mr. Dennis, who was there in the hospital to seek medical treatment, believed he was having a heart attack and objectively believed that. There was no emphasis on what the hospital, the other contracting party, would have understood or reasonably believed about his manifestations. It was all focused on Mr. Dennis and whether he was objectively reasonable in believing he had a heart attack. Moreover, there's no dispute that in Dennis, Mr. Dennis actually did intend to sign a contract. He was in the hospital. He thought he was dying. He wanted to receive medical treatment. He knew he was signing an agreement about medical treatment. He intended to sign that agreement. He just didn't care what was in the agreement because of his circumstances. So in short, Dennis is not a Lucy case and is in no way inconsistent with Lucy nor this Court's decision. The third exception would be if the prior decision was clearly erroneous and would work a manifest injustice. That is a very strict standard. In the L. G. Biswilvon case, this Court stated that the wrongness of the prior decision must, quote, strike us as wrong with the force of a five-week-old unrefrigerated dead fish, end quote. In other words, that it was dead wrong. This was carefully considered by the Court. It is perfectly consistent with Lucy and is a correct statement of law. I wanted to talk also just about the standard for review of jury instructions for a moment. I know the Court is well familiar with it, but it is a heavy burden for GASCO. It's an abusive discretion standard. Trial courts have wide discretion in selecting a jury charge. The question is, are the instructions adequate, construed as a whole, in informing the jury about the controlling legal principles without misleading or confusing the jury? Now it is correct that an instruction, whether it correctly states the law, that is review de novo. But even if an instruction was erroneous, the Fourth Circuit will not set aside a resulting verdict unless that instruction seriously prejudiced the challenging party's case. And that cannot be established here. It was GASCO who injected that legal standard into this case in front of the jury. In opening statement, before the first time the parties could address the jury, GASCO said that one of the, quote, legal issues, quote, the framework that they're operating within, was, quote, did CONSOL make a mistake when it sent the addendum contract? It's JA 1368. GASCO then went on to say, quote, if you find that CONSOL did make a mistake, then GASCO still wins, unless you also find that GASCO knew or should have known about the mistake. It's on JA 1369. This was days before the court had distributed draft jury instructions, days before a charging conference. Well, that argument was consistent with our prior decisions, isn't it? It absolutely is. In other words, there is the notion of unilateral mistake, but that wasn't being invoked here. The question is whether a party made a mistake and the other party knew it and tried to take advantage of it. That then goes to mutual assent. Yes, and as you stated in your questions, the word mistake is not some magic signal that now we're in the affirmative defense doctrine and we can't be in mutual assent. Mistake can have a lot of different forms and a lot of context. In this case, the fact of a mistake, that the addendum form was sent in error, and therefore, as your Honor's questions revealed, CONSOL fundamentally lacked an intent to enter into the contract, that is squarely a mutual assent in court. So the notion of a mistake being part of the mutual assent inquiry, that is perfectly fine if the circumstances warrant. But when GASCO injected this standard into the case, it was consistent with the court's decision, but the trial court had not issued its jury instructions, had not even submitted a draft when there hadn't been a charging conference. GASCO cannot say they were prejudiced in its case, because it volunteered to the jury, this is a legal issue that will define the inquiry. At that point, CONSOL could have, and it did in its opening argument, seized on that, said, well, we agree on the legal issue in this case. On brief, GASCO tried to make a futility argument that the court's ruling on a motion in limine, weeks earlier, where GASCO sought to exclude evidence of CONSOL's mistake and evidence that GASCO knew or should have known of the mistake, said, well, it would have been futile to argue it again. That was a motion in limine. It was not about the jury instructions. By GASCO's own argument, they cannot presume that language and opinion would find itself in a jury instruction. Instead, they made the tactical choice to tell the jury, for trial purposes, this is going to be the issue on the case. That choice has consequence on appeal. In addition to the invited error doctrines, they would never be able to show prejudice by the court instructing consistent with what it volunteered to the jury. I would also like to just point out to the court's attention that the jury instruction charge as a whole, instruction number nine, which has not been objected to or challenged on appeal, the issues instruction, it does define what the mistake was in this case, which is a lack of intent. The mistake was sending the addendum to GASCO in error. GASCO knew, CONSOL contends that GASCO knew or should have known the addendum was sent in error and not intended to reinstate the 2008 drilling contract. The trial court was very clear with the error and the mistake and that it speaks to the issue of intent to form the contract. Thank you. I will yield the rest of my time to Ms. Mundy. All right, Ms. Mundy. May it please the court, good morning. I will address the issues relating to the 2012 Noah Horn contract. The district court did not abuse its discretion in denying GASCO's motion for new trial. Both the misconduct and admissibility arguments fail because the 2012 Noah Horn contract simply was not the game changer that GASCO claims. In fact, that contract had minimal relevance, as the district court correctly found. Under a Rule 60 analysis, that contract did not prevent GASCO from fully trying its case, and under a 403 analysis, any slight relevance was substantially outweighed by the danger of unfair prejudice to CONSOL and the danger of confusing the issues. Therefore, the district court did not abuse its discretion. Now, as this court has previously held, the central question in this case is whether GASCO was warranted in believing that CONSOL intended a real agreement or whether it should have known that CONSOL had made a mistake. The very contract that we're talking about, the 2012 Noah Horn contract, GASCO didn't even know about it when they received the addendum, and the reason is because it didn't even exist. The Noah Horn contract was not executed until December 19, 2011, which was six months after the addendum had been executed. So this case was all about what GASCO knew or should have known, and clearly the Noah Horn contract executed six months after the addendum in question could not have borne on that issue. Now, in addition to the temporal disconnect that we have with this document, it's also simply a different beast. It was not a take-or-pay contract like the addendum was. It wasn't even an addendum form. It was not sent as part of the Evergreen process in the summer of 2011, and it did give exclusive drilling rights to Noah Horn in the Claypole Hill, Virginia, and Knoxville, Tennessee area. It was also a three-year term, so it was completely different than what we are talking about with an addendum that shows up out of the blue and doesn't relate to an existing contract like the Noah Horn did. Now, on the... Excuse me, but the thing that was similar, I thought, was that your position was that you had something like purchase orders versus regular contracts. Perhaps I've got the wording wrong, but do you understand what I'm talking about? Yes, Your Honor. And this wasn't a purchase order. Your Honor, and that difference goes, and the district court addressed that particular issue. Well, I understand, but that's sort of, I think, the kernel of their argument with respect to this other contract, and I just wondered what you had to say about that. Correct, Your Honor. And the way that the district court answered it, I think, is really the most appropriate way, which is that the issue that was relevant in this case as related to Consol's contracting practices, which is what we're talking about, the terminology and whether the drilling contracts are CPOs, that related to what happened in June of 2011 during the Evergreen process. And the relevancy of a document that was executed and issued six months later had minimal relevancy on that point. The relevancy concerned what happened at that time. And the district court... I think I understand your position, but their position was that you had made a big, your side, not you necessarily, that your side had made a big distinction between these two types of contracts. And here you're blurring that distinction. And your response is, oh, well, we blurred it out to the fact, but it doesn't make any difference. Is that basically... Not at all, Your Honor. Not at all, Your Honor. Okay. And, again, the district court was in the best position to really evaluate the relevancy of this document versus, of course, the unfair prejudice as well. And this document arrived as a surprise to Consol on the third day of trial. And the district court evaluated that... Well, it's not that you hadn't seen it before, because you're a party to their contract, right? So it's a surprise. I mean, they made something of that, too. They said you hadn't produced it in discovery. Correct, Your Honor. But what the district court actually found is that as it related to the material issues in this case, which is what GASCO knew or should have known and whether we made a mistake, it had only minimal relevance as it related to GASCO. In fact, what it did was it actually bolstered our claim of mistake for the very reasons that I just emphasized. Because this was a... The addendum was a take-or-pay contract. It overlapped with some of the geographic areas that GASCO says is covered by the addendum. The start date was inconsistent. They already... GASCO already... I'm sorry, Noah Horn already had an existing contract with GASCO. And so why would GASCO have entered into an exclusive contract with Noah Horn when it was already guaranteeing payment to GASCO under the addendum? So in truth, when on balance, this document actually bolstered GASCO's mistake rather than really helping GASCO's case at all. And the district court said on balance, when we consider all of the factors that is required under this court's... That's all true, then. You shouldn't be yelling surprise. You should be cheering. Well, Your Honor, and let me explain that because I think that's a fair point, Your Honor. You have many points. That is a fair point. The surprise needs to be understood in context. And the district court noted this document was received and in GASCO's possession several days before the trial. They did not disclose this to us until the third day of trial. There was unfair surprise on that part. Now, I understand this was a contract and that we believe... In other words, you're arguing the surprise was it wasn't on the witness list. I mean, on the exhibit list. Correct, Your Honor. Yes, Mr. Boyd was on the witness list. The document was not on the exhibit list. So in the court, even after the trial... So the court addressed it at trial and said, this is an unfair surprise. They did not know about it. And the problem was that we really couldn't identify at that moment, in the heat of the litigation, what it was and what it meant. Now, even after the trial, during the post-trial motions,  to evaluate everything in context, everything that had happened at trial, the totality of the evidence and the circumstances, and to determine whether there was, in fact, unfair surprise and what that document's relevance was to the entire case. And I believe it is at JA 1039, the district court said that it still, even post-trial, believed that Consol was genuinely surprised by the arrival of this document on the third day of trial. And in this case, Your Honor, we'd also point out that this is the second trial that the parties have had. So this document arrives midway through the second trial, and the district court was uniquely positioned in this case to appreciate and understand the conduct of Consol, of Consol, of the litigants, and to understand the relevance of this document in the scheme of the entire case. And based upon that, the district court correctly found that there was no misconduct that warranted a new trial, and that on balance, as the Schultz analysis requires, when we weigh on balance the interest in finality and the interest in justice, that the scales tipped in favor of finality on this record. All right. All right. Mr. Byrd? Thank you. Thank you, Your Honors. With respect to the misconduct, we dispute a number of things. First of all, the claim that this contract, that the Noah Horne contract purchase order is somehow irrelevant because it was signed months later, that ignores all the similarities and the practices that were the same with respect to these contracts. They were in Consol's database at the same time. They were signed by the same department, a department that Consol told the jury couldn't sign drilling contracts. They had the same validity date on them. They had very similar addendum, I'm sorry, evergreen language in them. Consol represented to the district court that its practices had changed. It did that. Let me ask you, I thought your interrogatory didn't ask for that document, but rather the earlier document. Is that correct? Well, we had an interrogatory that asked about their basis for claiming Gaspin knew or should have known. Are you referring to the document request? No, I'm talking, I thought it was an interrogatory, but I thought you requested the earlier document, but not this one. So there's a number, let me try to untangle that. And then there was a request for relevant documents, I think, and there was a witness list had to be prepared pre-trial. I mean, not witness exhibit list, but at the bottom, the court didn't think that was very relevant to the whole trial. He said it's a minimal relevance or whatever adjective he used when he was reviewing it later. In other words, the real focus of the trial was whether you should have known or knew or should have known that Consul did not intend to enter into or revive a contract with you. And as Consul told the district judge in post-trial briefing, characterization of its mistake as sending the document was the predicate for its mutual assent argument. And this document goes directly to what was the nature of the mistake. Because Consul's claim was the mistake was sending this addendum because an addendum for a contract purchase order can't be for a drilling contract. But this document shows that's fundamentally false. Except, see, that goes to the unilateral mistake issue, and the real issue wasn't unilateral mistake. The real issue was whether you knew, Gasco, knew of the unilateral mistake. And that's what the jury had to decide, because otherwise the burden then goes as a heavy burden to show unilateral mistake, as you know. And, Your Honor, the intermingling of those issues comes up again because it's a fundamental problem. It's not a problem. It's a reality. It seems to me if you know they made a mistake and you take advantage of it, there's no mutual assent. Isn't that correct? That's not what the jury was instructed. Is that correct proposition? Proposition that if you knew they made a mistake and tried to take advantage of the mistake, there's no mutual assent. The Virginia Supreme Court has never said that. I'm asking you, is that what you understood the law? We said it. And, Your Honor, you didn't cite any case for that proposition. Do you think that's wrong? If you read the Ward case. As a matter of law, you think that's what you're representing to us, that that's wrong? What I'm representing is that mutual assent is a low bar. You look at it objectively. Why don't you answer the question? Yes, I think that's not a correct statement of Virginia law. So you opened your jury argument with that statement of law, which was an error. No, our jury argument said that there was a second issue, and that came after the No, I'm talking about the one that was just quoted by your colleagues here. They said you opened the jury argument saying that this was a mistake that purportedly you knew about and took advantage of. That's the issue in this case. What we said is that there is a second issue, apart from mutual assent, that the district court had already held was in this case whether Gaskin knew or should have known. That was a holding that the district court Let me ask you just as a common sense proposition. I don't quite understand. It may turn out that this is the whole case here. Are you suggesting that if some party knows the opposing party made a mistake in entering into a contract and took advantage of that mistake, knowing that the other party never would have entered into it had it known of the mistake, you think you can form a contract with mutual assent? No, Your Honor, because if the contract Well, then why did you hesitate in your earlier answers to the earlier questions? Because of course you're right. No, that wouldn't be a formation of a contract. I'm sorry, Your Honor. I hesitate because this court is sitting in the diversity. And this court is very cautious about what it says about Virginia law. And Virginia law has never made that pronouncement. So yes, we can sit here and say that as a principled matter, that doesn't seem like there should be mutual assent. Well, Virginia law can't cover every factual circumstance that provides assent or not assent. Virginia law says what a reasonable person would interpret in terms of acts and But if you are taking advantage of another party who's made a mistake and you knew of the mistake and you knew they wouldn't have entered into that contract, it follows that there couldn't be mutual assent. And you're arguing with us that that's not a correct proposition of law. Earlier you said that's an error. Well, Your Honor, what my argument is coming from the Dennis case, which makes very clear that principles of an affirmative defense do not belong in mutual assent. That's not an affirmative defense. That's mutual assent. We're not talking about approving a unilateral mistake by a party. We're talking about a situation where the one party knows of the other party's mistake and takes advantage of it. And the one thing I'd say in response, Your Honor, is that in this case where Gasco signed the contract second, it cannot I just want to know, is that a correct proposition of law? Yes. Okay. And when Gasco signs a contract second, after confirming which contract he wants to sign, Gasco can't possibly know that Consol has not read its own contract. That's a critical part of the facts that often get overlooked here. Gasco confirmed what contract Consol wants to renew. You presented all that to the jury, didn't you? Yes. But what I'm saying is Gasco can't know there's been a mistake when Consol signs second. That's a jury argument. I mean, there are a lot of facts that pointed to your knowledge of the mistakes and how you handled your arrangement with the attorney and who knew about it and the e-mails and the And how you billed. Yeah. These types of things. There's a lot of evidence that the jury had to consider. And as we said before, this was a fact for the jury to resolve. And the jury did resolve it against you. Now, you're not arguing that there was not substantial evidence to support the jury verdict. You're arguing that as a matter of law, the district court misstated the law when it stated the proposition we've been debating here. Correct. And a lot of the evidence that Your Honor just mentioned runs afoul of the first point I made, which is that you look exclusively at the parties' communications with each other at the time of contracting. That's undisputed. They have disputed it here today. And if you can find the evidence to that appropriate universe, which Virginia has repeatedly said over and over, then all those things about Gasco's billing practices and what it talked to its attorney and internal meetings with accountants, those are not part of the mutual assent inquiry. You're not arguing. You haven't argued in your brief and you're not arguing now, are you, that the jury didn't have the sufficient facts to make its finding? We're arguing that the jury was not told the correct universe of evidence to evaluate mutual assent. They're not talking about universe of evidence. They were told the Lucy standard. It was quoted verbatim from Lucy and our prior opinion, which basically said if one party knows that the other party is making a mistake and takes advantage of it, then that party can't understand that there's mutual assent. And what I'm saying is there's an independent problem, which was the failure to tell the jury in the instruction that you can only look at the parties' communications at the time of contracting. That is Virginia's. You didn't raise that and we haven't been debating that. It's in our brief. It's absolutely. It's the first argument I made this morning. All this evidence from the beginning is ongoing. There's a lot of context. I mean, you knew you lost your contract in 2010. You knew that the next contracts were not going to have the standby arrangement. You knew that Noah Horne had the contract and was operating. And then you have this consult with the attorney and the e-mails and the exchanges. The jury heard it all. And, Your Honor, the hospital in the Dennis case knew that the man was having a heart attack on a gurney and thought he was going to die. That doesn't matter. You look at what did they manifest about the agreement at the time of contracting. Our position, Your Honor, has been consoled, says this is a mistake case, and it should have to prove its mistake defense. Thank you. All right. We'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Henry F. Floyd